IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL ISAIAS FLORES
GONZALEZ,

   Petitioner,

   v.

CRAIG A. LOWE, *et al.*,

   Respondents.

:   Civil No. 1:26-CV-00993
:
:
:
:
:
:
:
:
:
:
:   Judge Jennifer P. Wilson

## MEMORANDUM

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner Daniel Isaias Flores Gonzalez ("Flores Gonzalez"). (Doc. 1.)  Flores Gonzalez argues that he is being wrongfully detained without a bond hearing under 8 U.S.C. § 1225(b) and, instead, should be immediately released or given an appropriate bond hearing pursuant to 8 U.S.C. § 1226.  For the reasons that follow, the court will grant Flores Gonzalez's petition and order a bond hearing before an immigration judge.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Flores Gonzalez is a native and citizen of Honduras.  (Doc. 7-2, p. 4.)[1]  He entered the United States without inspection in approximately 2008.  (Doc. 1, ¶ 16.)  On February 18, 2026, immigration officials encountered Flores Gonzales

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

when they pulled over a vehicle that he was a passenger in with his employer in Newark, New Jersey.  (*Id.* ¶ 17.)  The next day, Flores Gonzalez was charged as inadmissible under the Immigration and Nationality Act ("INA") §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) and served with a notice to appear.  (Doc. 7-3, p. 5.)  He was initially held in New Jersey but was transferred to the Pike County Correctional Facility on April 15, 2026, where he remains detained.  (Doc. 1, ¶ 6.)

On April 17, 2026, Flores Gonzalez filed a petition for writ of habeas corpus requesting release from detention against Craig A. Lowe, in his official capacity as Warden of Pike County Correctional Facility; John E. Rife, in his official capacity as Acting Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations Philadelphia Field Office; Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security; and Todd Blanche, in his official capacity as Acting Attorney General of the United State (collectively, "Respondents").[2]  (Doc. 1.)  Respondents

---

[2] Respondents submit that the only proper respondent is Craig A. Lowe because he is the Warden of Pike County Correctional Facility.  (Doc. 7, p. 1 n.1.)  In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent.  *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.")  The court will not address an argument requesting dismissal of other Respondents when only raised in a footnote.

filed a response on May 4, 2026, and Flores Gonzalez filed a traverse on May 6, 2026.  (Docs. 7, 8.)  Thus, this petition is ripe for review.

### STANDARD OF REVIEW AND JURISDICTION[3]

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States."  Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)).  Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted).  Flores Gonzalez is detained at Pike County Correctional Facility, which is within the Middle District of Pennsylvania.  *See* 28 U.S.C. § 118(b).

### DISCUSSION

Flores Gonzalez argues that he was improperly detained under Section 1225(b) of the INA, which relates to applicants for admission.  (Docs. 1, 8.)  Flores Gonzalez submits that he should have been detained, if at all, pursuant to 8 U.S.C.

---

[3] Unlike prior habeas petitions before this court that presented similar issues, Respondents do not argue that the court lacks subject matter jurisdiction in this case, thus, the court will not address that issue here.  (*See* Doc. 4.)

§ 1226(a) and provided a bond hearing because he is not an applicant for admission. (Docs. 1, 8.) Flores Gonzalez requests the following forms of relief: order that Flores Gonzalez shall not be transferred out of this District while his petition is pending; declare that Flores Gonzalez's detention is unlawful; order Flores Gonzalez's immediate release or, alternatively, order a bond hearing; return Flores Gonzalez's personal property upon release; and award reasonable costs and attorney fees as provided by the Equal Access to Justice Act ("EAJA"). (Doc. 1, p. 23–24.)

Respondents agree that Flores Gonzalez is detained pursuant to Section 1225(b)(2)(A). (Doc. 7, p. 4.) They assert that Flores Gonzalez falls within the statutory definition of "applicant for admission," he is properly detained under Section 1225(b)(2), and Section 1226(a) is inapplicable to him. (*Id.* at 4–22.) Respondents submit that the plain language of Section 1225(b)(2) requires detention of applicants for admission and that the section's reference to noncitizens "seeking admission" does not narrow the scope of Section 1225(b)(2). (*Id.* at 5–20.) They further argue that their interpretation of Section 1225(b)(2)(A) does not make Section 1226(a)'s discretionary detention authority superfluous and *Jennings* does not undermine Respondents' interpretation. (*Id.* at 15–22.) Respondents also assert that Flores Gonzalez's temporary detention does not violate due process. (*Id.* at 22–26.) Alternatively, if the court wishes to grant Flores Gonzalez's

4

petition, Respondents request that the court order a bond hearing rather than releasing Flores Gonzalez.  (*Id.* at 27.)

Section 1225 of the INA is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  8 U.S.C. § 1225.  It defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ."  *Id.* § 1225(a)(1).  Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Noncitizens subject to this mandatory detention may only be released while their removal proceedings are pending "for urgent humanitarian reasons or significant public benefit."  *Jennings*, 583 U.S. at 288.  The BIA recently decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025), wherein the BIA held that noncitizens who enter the United States without admission are subject to mandatory detention under Section 1225(b)(2)(A), and thus, immigration judges lack the authority to provide a bond hearing.

Conversely, 8 U.S.C. § 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed

from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>> (a) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (b) conditional parole; but
>
> (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

The parties agree that Flores Gonzalez is detained pursuant to Section 1225(b)(2)(A) and neither party alleges that Flores Gonzalez is subject to Section 1226(c).[4]  (*See* Docs. 1, 7, 8.)

The Second, Sixth, and Eleventh Circuit Courts of Appeals and federal district courts across the country and within this district have, overwhelmingly, rejected Respondents' position regarding the applicability of Section 1225(b)(2)(A) to detainees like Flores Gonzalez, a noncitizen who previously entered and had been living in the United States prior to his detention.[5]  *See, e.g., Cunha v. Freden*, No. 25-3141, 2026 WL 1146044, --- F.4th ---- (2d Cir. Apr. 28,

---

[4] Section 1226(c) requires detention of noncitizens who are inadmissible or deportable because they have committed a criminal offense identified in this section.  8 U.S.C. § 1226(c).

[5] The court acknowledges that there are some district courts, as well as the Fifth and Eighth Circuit Courts of Appeals, who have agreed with Respondents' interpretation of Section 1225. (*See* Doc. 8, p. 2–3.)  *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  However, none of these decisions are binding on this court.

2026) (holding that petitioner's "detention is governed by Section 1226(a), not Section 1225(b)(2)(A)"); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, --- F 4th ---- (6th Cir. May 11, 2026) (same); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, __ F.4th __, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026) (same); *Hernandez v. Kunes*, No. 1:25-cv-1847, 2026 WL 411726 (M.D. Pa. Feb. 13, 2026) (Wilson, J.) (holding Section 1225(b) was inapplicable to petitioner); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-cv-1896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.) (adopting report and recommendation finding that Section 1225 was inapplicable to petitioner); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025) (collecting cases within the Third Circuit as of December 8, 2025); *Quispe v. Rose*, 3:25-cv-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025) (holding that petitioner was improperly detained under Section 1225(b)(2)(A)); *Patel v. O'Neill*, 3:25-cv-2289, 2026 WL 323121 (M.D. Pa. Feb. 6, 2026) (same). "The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of *Hurtado*, as contradictory to the plain text of § 1225." *Demirel*, 2025 WL 3218243 (citing *Ayala Amaya v. Bondi*, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases)).

7

The court is persuaded by and agrees with the Second, Sixth, and Eleventh Circuit Courts of Appeals and the majority of federal district courts that have ruled on this issue to date in rejecting Respondents' interpretation of Section 1225(b)(2)(A).  Flores Gonzalez's detention under Section 1225(b)(2)(A) is unlawful because Section 1225(b)(2)(A) "applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States."  *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025).  Thus, this section simply does not apply to someone like Flores Gonzalez, who has been residing in the United States for approximately eighteen years.  *Id.* (collecting cases adopting the same conclusion).

In reaching this conclusion, the court holds that Respondents' interpretation of "seeking admission" violates the rule against surplusage and contradicts the plain meaning of the statutory text.  *Bethancourt Soto*, 807 F. Supp. at 406 (finding that respondents' interpretation "violates the rule against surplusage and negates the plain meaning of the text."); *see also Patel*, 2025 WL 3516865, at *5 (citing *Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025 WL 3294726, at *5 (E.D. Pa. Nov. 25, 2025)) (same).  If Section 1225(b)(2)(A) applied to every "applicant for admission," the phrase "seeking admission" would become

8

unnecessary and surplusage.[6] *Bethancourt Soto*, 807 F. Supp. 3d at 406–07

(citations omitted); *see also United States ex rel. Polansky v. Exec. Health Res.,*

*Inc.*, 599 U.S. 419 (2023) (explaining that "every clause and word of a statute

should have meaning" and "no clause, sentence, or word shall be superfluous,

void, or insignificant"). Further, "seeking admission" connotes "some affirmative,

present-tense action" such that it "requires an act currently underway not a static

condition." *Id.* at *5 (citations omitted). Thus, Respondents' argument that

Section 1225(b)(2)(A) does not require any "affirmative act" is contrary to the

plain meaning of the words "seeking admission."[7]

---

[6] *Bethancourt Soto*, 807 F. Supp. 3d at 407, provides a helpful example of why Respondents'
interpretation violates the rule against surplusage:

> [R]emoving the words "seeking admission" from § 1225(b)(2)(A) would not alter its
> meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for
> admission, if the examining immigration officer determines that an alien ~~seeking admission~~
> is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]"
> That result is inconsistent with the principle that courts must interpret a statute to give
> meaning to "every clause and word" that Congress chose to include. *See* Polansky, 599
> U.S. at 432, 143 S.Ct. 1720 (quotation marks omitted).

[7] Again, the examples provided by the court in *Bethancourt Soto*, 807 F. Supp. 3d at 406–07, are
illustrative of why Respondents' argument fails:

> For example, one could deem every person in the country a "potential homebuyer," but
> they are not "seeking to buy a home," without taking some affirmative action towards that
> goal. Nor is every "employable adult" in the country "applying for a job," simply because
> jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater
> without purchasing a ticket and then proceeds to sit through the first few minutes of a film
> would not ordinarily then be described as 'seeking admission' to the theater. Rather, that
> person would be described as already present there." *Benitez*, —— F.Supp.3d at ——, 2025
> WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for
> a ticket, one would not ordinarily describe them as 'seeking admission' ... at that point—
> one would say that they had entered unlawfully but now seek a lawful means of remaining
> there." *Id.*

Respondents' interpretation also makes Section 1226(c)'s mandatory detention provision superfluous and redundant. *Centeno Ibarra*, 2025 WL 3294726 at \*6 ("Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

In sum, Flores Gonzalez is not currently "seeking admission" to the United States. That was his status in 2007. Therefore, Section 1225(b)(2)(A) does not apply to him as he is not currently "seeking admission" to the United States.

Addressing Flores Gonzalez's constitutional claims, it is undisputed that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). Thus, the court must determine what process is due to Flores Gonzalez, who is currently subject to mandatory detention without a bond hearing, by applying the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* requires the court to weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and

10

(3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The first factor weighs heavily in Flores Gonzalez's favor because the "official action" has deprived him of his physical liberty. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by one's own government."). The second factor similarly swings in Flores Gonzalez's favor because he "is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing." *Bethancourt Soto*, 807 F. Supp. 3d at 409 (emphasis in original). As to the third factor, the court recognizes Respondents' interest in detaining noncitizens to ensure "the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Still, this factor weighs in favor of Flores Gonzalez because Respondents do not contend that he poses a danger to the community or that he is a flight risk. Accordingly, the *Mathews* factors weigh in Flores Gonzalez's favor and the court finds that his mandatory detention without a bond hearing under Section 1225(b)(2)(A) violates his procedural due process rights. *See Bethencourt Soto*, 2025 WL 2976572 at *8 ("Taken together, the Court finds that the *Mathews* factors weigh decisively in Petitioner's favor, and as such his mandatory detention

under § 1225(b)(2)(A) violates his procedural due process rights.") (citations omitted); *Patel*, 2025 WL 3516865 at *6 (holding same).  Thus, the court will grant Flores Gonzalez's petition.  However, because an immigration official has not yet made a determination regarding release or bond for Flores Gonzalez, the court will order an individualized bond hearing before an immigration judge to occur within fourteen days.[8]

Flores Gonzalez also requests costs and reasonable attorney's fees.  (Doc. 1, p. 24.)  Courts are permitted to entertain these requests as provided by the EAJA. Respondents do not respond to this argument.  (*See* Doc. 7.)  That said, the court will not make a determination of fees and costs here but will permit Flores Gonzalez to file an appropriate motion for costs and fees pursuant to the EAJA within thirty days of the entry of final judgment.

---

[8] The court acknowledges that Flores Gonzalez has argued that immigration judges lack independence.  (Doc. 8, pp. 4–8.)  However, the court will not address an argument raised for the first time in a reply brief.  More importantly, the court is ruling on an individual habeas petition regarding Flores Gonzalez's detention solely.  The court declines to base any decision in this case on information regarding how bond issues may have been addressed in other cases.

**CONCLUSION**

For these reasons, the court will grant Flores Gonzalez's petition for writ of habeas corpus and order an individualized bond hearing before an immigration judge within fourteen days. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: May 13, 2026